**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **NORMAN BOSTIC, individually and as Administrator of the Estate of NORMAN SAMPLES,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 5:24-cv-406 (MTT)** |
| **GEORGIA DEPARTMENT OF CORRECTIONS, et al.,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

## ORDER

Plaintiff Norman Bostic, individually and as Administrator of the Estate of Norman Samples, claims that ten defendants[1] and ten John Does employed by the Georgia Department of Corrections ("GDC") violated Norman Samples' constitutional rights by acting with deliberate indifference to the general threat of inmate-on-inmate violence at Hancock State Prison ("HSP"), deliberate indifference to Samples' severe cold exposure and lack of bedding and clothes, and deliberate indifference to Samples' serious medical needs. ECF 34 ¶¶ 103-200. The defendants have moved to dismiss Bostic's second amended complaint. ECF 40. For the following reasons, the defendants' motion to dismiss (ECF 40) is **GRANTED in part** and **DENIED in part.**

---

[1] The second amended complaint does not include any allegations as to Defendant Jeremy Foston, but Bostic has not dropped Foston as a party. *See generally* ECF 34. Accordingly, any claims against Foston are **DISMISSED without prejudice.**

I.  **BACKGROUND**

At all times relevant to this action, Samples was an inmate at HSP in Tier 1: Disciplinary, Protective Custody and Transient Housing, specifically the "G Block." ECF 34 ¶¶ 60, 64, 86-89. In prison parlance, Samples was in segregation, rather than in General Population. Defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury were "on-duty" and actively working shifts at HSP between December 25 and 27, and defendants Salad, Crayton, and Saulsbury were assigned to the G Block. *Id.* ¶¶ 30, 33, 36, 43, 104. Defendant Ward was the Commissioner of the GDC, defendant Toole was the Director of Field Operations of GDC, and defendant Toby was the Warden of HSP. *Id.* ¶¶ 5, 9, 13.

**A. HSP General Conditions**

In the days and weeks leading up to Samples' death, HSP was routinely understaffed. *Id.* ¶¶ 67-68, 75. In December 2022, 70% of correctional positions at HSP were unfilled. *Id.* ¶ 67. From December 25 to 27, 2022, on average only 10 out of 107 correctional positions that were required to be filled on the "Post Roster" were filled. *Id.* ¶ 68. Some correctional officers were working two posts. *Id.* GDC/HSP policies required a minimum of 36 correctional officers per shift based on the 972 inmates housed at HSP. *Id.* In their capacities as correctional officers, on-duty defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury frequently made their required security rounds consecutively rather than spacing them out over the course of their shift as mandated. *Id.* ¶ 120. This provided opportunities for inmate-on-inmate violence as prisoners were aware that officers would consistently and predictably skip their security rounds. *Id.* On December 25, 26, and 27, 2022, one correctional officer was assigned as "On Post" for

the entire G Block. *Id.* ¶ 92. The prison as a whole averaged one guard for every 100 inmates and did not have the minimally required number of on-duty officers. *Id.*

In the five years preceding Samples' death, ten inmates were murdered at HSP. *Id.* ¶ 72. Four of those murders occurred "in the months before Samples died." *Id.* ¶ 111. Other inmates were stabbed and maimed during this time. *Id.* ¶¶ 74; 111. Before and at the time of Samples' death, non-violent inmates were not segregated from violent inmates, "inmates with mental disorders were not segregated from those without mental disorders," and "convicted sexual predators" were not segregated from other inmates at HSP. *Id.* ¶ 75. Inmates were allowed to fashion weapons, import weapons, and stockpile weapons. *Id*. Correctional officers' searches, shakedowns, and visual inspections of cells for weapons were inadequate and ineffective. *Id*. Correctional officers failed to locate and control contraband cellphones, and inmates used cell phones to plan violent attacks. *Id*. ¶¶ 75, 112. The officers routinely represented that they had made their required rounds when they had not. *Id.* ¶ 70.

## B. Cold Conditions, Attack, and Death

On December 21, 2022, the Governor of Georgia, Brian Kemp, declared a State of Emergency for all Georgia counties in preparation for dangerously cold weather. *Id.* ¶ 83. In Sparta, where HSP is located, temperatures dipped into the teens and remained low through December 27, 2022. *Id*. Due to insufficient heating and poor insulation in the prison, inmates were exposed to harsh cold conditions. *Id*. ¶¶ 84-85. On-duty defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury were all personally aware of both the dangerously low temperatures on December 26 and 27 and HSP's

inadequate heating and insulation systems because they perceived the cold and knew of the Governor's State of Emergency. *Id*. ¶¶ 133-135.

On a date not alleged, Samples was moved from his segregation cell and put in a segregation cell with Jeffery Dewayne Bully, a violent sexual offender. *Id.* ¶ 93. This move was not documented and was in derogation of prison requirements or standard operating procedures for the segregation unit. *Id.* ¶ 94. On or about December 25, 26, or 27, 2022, Bully violently attacked Samples. *Id.* ¶¶ 95, 179. After the attack, Samples was actively bleeding from his head and suffering from multiple fractured ribs, facial and cranial hemorrhages, and abrasions across his body. *Id.* ¶¶ 97, 102. Other inmates housed in G Block reported hearing a disturbance and observed several unnamed correctional officers gathered around and near Samples' cell.[2] *Id.* ¶ 96. Inmates saw unnamed officers forcibly strip Samples of his clothing and bedding, leaving Samples naked. *Id.* ¶¶ 96, 97. The officers then shut the vent/tray slot to his cell door. *Id.* ¶ 96.

For several hours, other inmates could hear Samples repeatedly banging on his cell door and calling out for help. *Id.* ¶ 97. Defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury, who were all working and within earshot, heard Samples' cries for help and other inmates calling for help for Samples. *Id.* ¶¶ 99, 104, 124. These defendants were aware that Samples had been stripped of his clothing and bedding and was bleeding, visibly injured, and exposed to extreme cold. *Id.* ¶¶ 100, 123, 125. Several inmates called out to Defendants Saulsbury and Floyd specifically, urging that Samples needed help and immediate medical attention. *Id.* ¶ 98. Saulsbury and Floyd

---

[2] It is not clear whether Samples by then had been returned to his cell.

"acknowledged hearing Samples' pleas for help" and "refused to call for or offer aid of any kind." *Id.*

On December 27, 2022 around 8:15 a.m., Samples was found naked and unresponsive in his cell. *Id.* ¶ 101. He was pronounced deceased about an hour later and was never transported to a hospital. *Id.* The Georgia Bureau of Investigation's Autopsy Report showed that Samples' primary cause of death was blunt force trauma to his head and torso. *Id.* ¶ 102. The medical examiner determined that hypothermia could not be ruled out as a contributing cause of death. *Id.*

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But

"conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

The doctrine of qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Although qualified immunity provides government officials with a formidable shield, their entitlement to raise that shield is not automatic …. [T]he official bears the initial burden of raising the defense of qualified immunity by proving that he was acting within his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'" *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)). The defendants maintain, and Bostic does not dispute, that the defendants were acting within their discretionary authority, so the burden shifts to Bostic. ECF 40-1 at 20; 42 at 19.

To overcome a qualified immunity defense, the plaintiffs must plausibly allege that (1) the facts, viewed in their favor, establish a constitutional violation; and (2) the

defendants violated rights that were clearly established at the time of the alleged violation. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). This two-step analysis may be done in whatever order is deemed most appropriate for the case. *Lewis*, 561 F.3d at 1291 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The plaintiffs can show the illegality of the defendants' conduct was clearly established in one of three ways: (1) by pointing to a materially similar case decided by the Supreme Court, Eleventh Circuit, or relevant state supreme court at the time; (2) by identifying a broader, clearly established legal principle that applies to the facts of the case; or (3) by showing the conduct was so plainly unconstitutional that prior case law is unnecessary. *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (collecting cases).

## III. DISCUSSION

The defendants first claim that the second amended complaint is an impermissible shotgun pleading. ECF 40-1 at 5. The Court disagrees; the second amended complaint is not a shotgun pleading. Unlike its predecessor, the second amendment complaint clearly states Bostic's claims and the facts that allegedly support those claims.[3] The defendants even acknowledge that "Plaintiff has identified three Eighth Amendment Claims." ECF 40-1 at 12.

Count One of the second amended complaint asserts two deliberate indifference claims: the first commonly known as a "failure to protect" from a general or generalized threat of violence claim and the second as a "conditions-of-confinement" claim. *See*

---

[3] The Court granted the defendants' motion to dismiss the first amended complaint (ECF 24), finding that the first amended complaint "is not only a shotgun complaint; it is incomprehensible." ECF 29 at 2. The Court also ordered Bostic to show cause on four grounds, highlighting additional defects in the first amended complaint. *Id.* The second amended complaint, though far too long, fixed those problems.

*Wilson v. Dunn*, 618 F. Supp. 3d 1253, 1269-73 (N.D. Ala. 2022); *Chandler v. Crosby*, 379 F.3d 1278, 1288-96 (11th Cir. 2004). First, Bostic alleges that defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury (the "on-duty defendants") were deliberately indifferent because they failed to protect Samples from the general threat of inmate-on-inmate violence at HSP and that defendants Ivey, Ward, Toole, and Toby were liable as supervisors for deliberate indifference to general threats of violence.[4] ECF 34 at 36, 60. Second, Bostic alleges that the on-duty defendants were deliberately indifferent to the substantial threat of serious harm to Samples caused by his severe and prolonged cold exposure and the seizure of his clothing and bedding. *Id*. at 50. Bostic claims that defendants Ivey, Ward, Toole, and Toby were liable as supervisors for deliberate indifference to the substantial threat of serious harm to Samples caused by his severe and prolonged cold exposure. *Id*. at 69. In Count Two, Bostic alleges that the on-duty defendants were deliberately indifferent to Samples' serious medical needs. *Id*. at 73.

### A. Failure-to-Protect and Conditions-of-Confinement Claims

Under the Eighth Amendment, prison officials must "provide humane conditions of confinement … ensure that inmates receive adequate food, clothing, shelter, and medical care, and … 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)); *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). To state a failure-to-protect or conditions-of-confinement claim, Bostic must plausibly allege: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3)

---

[4] For defendants Ward and Toole, Bostic also cites violent conditions throughout GDC's prisons. *See, e.g.,* ECF 34 ¶¶ 76-82.

causation.[5] *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1320 (11th Cir. 2016).

"The first element of an Eighth Amendment claim—a substantial risk of serious harm—is assessed under an objective standard." *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). To prevail, a plaintiff must allege "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Lane*, 835 F.3d at 1307; *Chandler*, 379 F.3d at 1289. In the failure-to-protect context, plaintiffs can make this showing by demonstrating either a "general threat" to inmates based on dangerous conditions in the prison or particular area of the prison, or by an individualized risk based on a "specific threat" to the prisoner. *Marbury*, 936 F.3d at 1233, 1235; *see also Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005). Here, Bostic invokes only the general threat of violence theory.

To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting *Farmer*, 511 U.S. at 839). Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 837). The determination of whether a risk has been disregarded is objective:

---

[5] Failure-to-protect and conditions-of-confinement claims are reviewed under the same standard. *See Mosely v. Zachery*, 966 F.3d 1265, 1270 (11th Cir. 2020).

"[T]he [defendant] must have responded to the known risk in an unreasonable manner." *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1262. In other words, "a defendant who 'respond[s] reasonably' to a risk, even a known risk, 'cannot be found liable' under the Eighth Amendment." *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 844, 837) (internal citation omitted). To allege that "the defendant acted with 'subjective recklessness as used in the criminal law'" the plaintiff must allege "that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm." *Id.* (internal citation omitted).

"Finally, the plaintiff must show a 'necessary causal link' between the [defendant's] failure to act reasonably and the plaintiff's injury." *Marbury*, 936 F.3d at 1233 (quoting *Rodriguez*, 508 F.3d at 622-23). This causal connection requires that the defendant "(1) had the means substantially to improve the inmate's safety, (2) knew that the actions he undertook would be insufficient to provide the inmate with reasonable protection from violence, and (3) had other means available to him which he nevertheless disregarded." *Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024) (quoting *Rodriguez*, 508 F.3d at 622).

### 1. Failure-to-Protect: Deliberate Indifference to the General Threat of Inmate-on-Inmate Violence

Bostic alleges that the on-duty defendants and supervisory defendants Ivey, Ward, Toole, and Toby were deliberately indifferent to the general threat of inmate-on-inmate violence at HSP. ECF 34 at 36, 60. The defendants argue that Bostic's claim fails because he did not allege "a substantial risk of serious harm" in Samples' cell block—the segregation unit. ECF 40-1 at 9-10. The burden to establish a substantial risk of serious harm based on a generalized threat or risk is a heavy one. "[A] plaintiff

must show 'more than a generalized awareness of risk.'" *Marbury,* 936 F.3d at 1234 (citation omitted). Instead, "[t]o establish deliberate indifference based on a generalized risk, the plaintiff must show 'that serious inmate-on-inmate violence was the norm or something close to it.'" *Id.* (quoting *Purcell*, 400 F.3d at 1322).

The defendants maintain that while Bostic alleged, verbatim, that "inmate-on-inmate violence was the norm or something close to it" at HSP (ECF 34 ¶ 110), he "has not alleged that inmate-on-inmate violence was the norm or something close to it in the *segregation unit*" where Samples was housed. ECF 40-1 at 10. The Court agrees. Bostic alleges that ten inmate-on-inmate murders occurred in the five years preceding Samples' death, four "of which occur[ed] in the months before Samples died." ECF 34 ¶ 111. But Bostic does not allege *any* specific facts about inmate-on-inmate violence in the segregation unit. Instead, he alleges:

> As a prisoner housed in administrative segregation, Mr. Samples was *locked in his cell at all times*, including during meals. He was only permitted to leave his cell for periodic showers and limited exercise, and even then, *he was required to remain isolated and under direct supervision*.

*Id.* ¶ 88 (emphasis added). Bostic does not attempt to explain whether or how the general threat of inmate-on-inmate violence existed in or had anything to do with the segregation unit, where Samples was "isolated," "under direct supervision," and "locked in his cell at all times." *Id.* And although Bostic alleges various deficiencies in the prison as a whole related to understaffing, insufficient segregation of inmates, and inadequate searches for weapons and contraband, many of these allegations do not plausibly apply to the segregation unit. *Compare id.* ¶ 88 *with id.* ¶ 75 (alleging insufficient segregation of various classes of inmates and that "[i]nmates were allowed to roam freely at HSP").

Bostic does not allege any specific features of the segregation unit rendering it particularly violent. *See Marbury*, 936 F.3d at 1235; *cf. Lane,* 835 F.3d at 1305-06 (Plaintiff alleged that his dorm was made up of 90% gang-affiliated males and numerous stabbings and beatings took place in his dorm because weapons were frequently concealed there and not confiscated). The second amended complaint falls far short of establishing an environment in the segregation unit "where violence and terror reign." *See Purcell*, 400 F.3d at 1320 (citation modified).

Moreover, the second amended complaint makes clear that the threat to Samples arose not from a generalized threat or risk, but rather from a specific risk. Samples was taken from his single-occupancy cell and put in another segregation cell with Bully. That allegedly improper move, not generalized violence in the segregation unit, allegedly caused Samples' injuries.[6]

Because Bostic has failed to establish a substantial risk of serious harm from generalized violence in the segregation unit, his deliberate indifference claim based on a general threat of inmate-on-inmate violence fails as to all defendants.

### 2. Conditions-of-Confinement: Deliberate Indifference to the Substantial Threat of Serious Harm to Samples Caused by the Severe and Prolonged Exposure to Low Temperatures and a Lack of Clothing and Bedding

#### a. On-Duty Defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury

Bostic alleges that the on-duty defendants were deliberately indifferent to the substantial threat of serious harm to Samples caused by his severe and prolonged cold exposure and the seizure of his clothing and bedding. ECF 34 at 50. The on-duty

---

[6] Again, Bostic's failure-to-protect claim is based entirely on general threats of violence, not a specific threat based on Bully's violent prison history—the second amended complaint is silent in that regard.

defendants argue that Bostic's failure to allege a specific temperature in the prison is fatal to his claim that they were deliberately indifferent and that Bostic's allegation that the on-duty defendants personally perceived the cold temperatures is somehow conclusory. ECF 40-1 at 17. Neither assertion is correct. The defendants cite no authority suggesting that alleging a specific temperature is necessary to plausibly allege a substantial risk of serious harm from severe temperature. Rather, in this context, courts examine both the severity and duration of an inmate's exposure to heat or cold to determine whether a substantial risk of serious harm has been established. *Chandler*, 379 F.3d at 1295 (citing *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997)). Bostic alleges that the Governor declared a State of Emergency for the cold on December 21, 2022 and temperatures in Sparta, where HSP is located, dipped into the teens and remained low through December 27, 2022. *Id*. ¶ 83. He alleges that HSP had insufficient heating and insulation, exposing inmates to harsh cold conditions (*id*. ¶¶ 84, 85), and that Samples was stripped of his clothing and blankets and left naked for hours. *Id*. ¶¶ 96, 97. Finally, the medical examiner could not rule out hypothermia as a contributing cause of death. *Id*. ¶ 140. This is sufficient to establish objectively extreme conditions that posed an unreasonable risk of serious injury to Samples' health and safety. *See Marbury*, 936 F.3d at 1233.

On the deliberate indifference prong, the on-duty defendants somehow claim that Bostic fails to sufficiently allege they were subjectively aware of the risk to Samples because Bostic "makes the conclusory and naked allegation that Defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury were aware of dangerously low temperature[s] on December 26-27, having personally perceived and felt them and

because of the State of Emergency that had been declared on December 21." ECF 40-1 at 17. This argument is meritless. Bostic plausibly alleges that these defendants were aware of the severe cold conditions inside HSP because they were there. ECF 34 ¶¶ 133-135. And he further alleges that the defendants were aware that Samples' clothing and blankets were taken from him, leaving him naked in the cold. *Id*. ¶¶ 96, 97, 100, 123, 124, 150. He alleges that the defendants heard Samples banging on his cell door and heard other inmates urging that Samples needed help. *Id*. ¶¶ 98, 99, 124, 141. From these facts, Bostic plausibly alleges the defendants knew that their failure to provide clothing and blankets put Samples at a substantial risk of serious harm and still failed to provide the same. *Id*. ¶¶ 141, 143, 152. Bostic has sufficiently alleged deliberate indifference.

Finally, the on-duty defendants argue that Bostic's allegations against them are inconsistent because he alleges in some instances that they all were present when Samples' clothing and bedding were removed or were otherwise informed of Samples' condition (ECF 34 ¶¶ 100, 123, 124, 150), and on another instance he alleges that only one defendant was "assigned as 'On Post'" for the G Block during the days in question (*id*. ¶ 92). In his response to the defendants' motion, Bostic explains that Paragraph 92 refers to the defendants' records for December 25 to 27, 2022 and does not negate his allegations regarding the status of the on-duty officers. ECF 42 at 6. The Court agrees with Bostic. Paragraph 92, in relevant part, alleges: "On December 25th, 26th, and 27th of 2022, only one Correctional Officer was assigned as 'On Post' for the entire G Block." ECF 34 ¶ 92. This allegation, read against Bostic's allegations regarding the on-duty defendants, simply signals that the defendants' records of "On Post" officers may be

inconsistent with prison records of "on duty" officers allegedly listing defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury as "on duty" and "in areas proximate to where Samples was beaten … or in supervisory positions" on December 26 to 27, 2022. *See id.* ¶¶ 23, 39, 43. The possible mismatch between these records does not undermine the plausibility of Bostic's claims.

Accordingly, Bostic has stated a claim for deliberate indifference based on Samples' severe and prolonged exposure to low temperatures and lack of clothing and bedding against the on-duty defendants.

> b. Supervisory Defendants Ward, Toole, and Toby[7]

Bostic alleges that defendants Ward, Toole, and Toby were liable as supervisors for deliberate indifference to the substantial threat of serious harm caused by Samples' severe and prolonged exposure to low temperatures. ECF 34 at 69. To state a claim against a supervisory official, a plaintiff must allege that the supervisor personally participated in the alleged unconstitutional conduct or that there is a causal connection between the actions of the supervisor and the alleged constitutional deprivation. *Douglas v. Yates,* 535 F.3d 1316, 1322 (11th Cir. 2008). A causal connection may be shown by alleging that the supervisor (1) was on notice of a history of widespread abuse of constitutional rights but failed to take corrective action; (2) established or put in place a custom or policy that resulted in the alleged constitutional deprivation; or (3) directed subordinates to act unlawfully or knew that subordinates would act unlawfully

---

[7] Defendant Ivey is included in this claim but to the extent he is liable as a supervisor, his liability derives from his personal participation in the alleged unconstitutional conduct, as alleged in the on-duty officer claim. *See* ECF 34 ¶¶ 23, 43. If Bostic intended to assert a supervisory liability claim against Ivey, it is covered by the on-duty officer claim.

and failed to stop them from doing so. *Id.* (citing *West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)).

The supervisory defendants argue that Bostic "has not sufficiently alleged personal involvement or causal connection[:] no custom or policy, no directing or failing to prevent subordinates from unlawful actions, and no widespread abuse." ECF 40-1 at 19. The Court agrees. Bostic has not alleged that the deprivation Samples allegedly suffered—extreme low temperatures and confiscation of clothing and bedding—was a regular occurrence to demonstrate a history of widespread abuse. And there are no allegations that the supervisory defendants were aware that Samples was stripped of his clothing and bedding and left naked for hours, which is the critical component of the substantial risk of serious harm to Samples during the prolonged cold period. Bostic does not allege that the supervisory defendants established a policy or custom that resulted in this deprivation or directed the on-duty defendants to engage in any conduct related to this deprivation. Bostic simply alleges that "Defendants Ward, Toole, [and] Toby … were aware, by virtue of their job positions and required reporting, that HSP was maintained in such a way that it lacked sufficient insulation and heating to be able to keep the building safe for inmates during low temperatures" and "[n]o effort was undertaken … to improve the physical facilities." ECF 34 ¶ 172, *see generally id.* ¶¶ 169-178. But he does not plausibly allege that the inadequate heating and insulation in the prison caused the substantial risk of serious harm Samples faced. Rather, he alleges that the on-duty defendants, who knew Samples was naked and in distress, were deliberately indifferent to the unconstitutional conditions of confinement that caused Samples' injuries. Thus, Bostic has not plausibly alleged a causal connection

between the actions of any supervisor (other than Ivey) and the alleged constitutional deprivation.

Accordingly, Bostic fails to state a claim for deliberate indifference based on Samples' severe and prolonged exposure to low temperatures against supervisory defendants Ward, Toole, and Toby.

**B. Deliberate Indifference to Serious Medical Needs Claim**

In Count Two, Bostic claims that the on-duty defendants were deliberately indifferent to Samples' serious medical needs after he was attacked by his cellmate and his clothes and bedding were removed. ECF 34 ¶¶ 179-196. To state a claim for deliberate indifference to a serious medical need, a plaintiff must allege: (1) "an objectively serious medical need"; (2) that "the prison official acted with an attitude of deliberate indifference to the serious medical need;" and (3) a "necessary causal link between the challenged conduct and [the plaintiff's] injuries." *Stalley*, 124 F.4th at 1283 (citation modified); *see Wade,* 106 F.4th at 1253. For the first prong, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (*overruled in part on other grands by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (quotation marks and citation omitted). Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended. *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003). Again, to state a claim for deliberate indifference, the plaintiff must allege that the defendant (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective

recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1255 (quoting *Farmer*, 511 U.S. at 839).

Bostic plausibly alleges that the on-duty defendants were deliberately indifferent to Samples' serious medical needs. He alleges that these defendants were personally aware of Samples' injuries, including "abrasions on the mid and right upper forehead and the right temple, lacerations on the scalp, eyebrow, abrasions scattered over the back, contusions/hemorrhage of back, abrasions on left shoulder and lower extremities, and contusions/soft tissue hemorrhage on his lower extremity." ECF 34 ¶¶ 179, 180. He alleges that each defendant knew Samples required immediate medical care because his injuries were "highly visible." *Id*. ¶¶ 179, 184. He alleges that Samples was naked in his cell for hours without clothing or bedding, suffering from numerous injuries, when temperatures in the prison were dangerously cold. *Id*. ¶¶ 180, 185. The Georgia Bureau of Investigation's Autopsy Report showed that Samples' primary cause of death was blunt force trauma to his head and torso, but the medical examiner could not rule out hypothermia as a contributing cause of death. *Id*. ¶¶ 102, 140. Thus, Bostic has sufficiently alleged a medical need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill,* 40 F.3d at 1187.

On the deliberate indifference prong, Bostic alleges that the on-duty defendants were aware of Samples' injuries, aware that Samples was stripped of his clothing and bedding, and aware of the dangerously low temperatures in the prison. *Id*. ¶¶ 179, 180, 184, 185. He alleges that the on-duty defendants heard Samples' cries for help and the pleas of other inmates seeking help for Samples in the hours following the attack, and defendants Saulsbury and Floyd even "acknowledged hearing" Samples' pleas for help.

*Id*. ¶¶ 180-182. Bostic alleges that despite the on-duty defendants' actual knowledge of Samples' injuries and lack of clothing and bedding in the harsh cold conditions, they failed to seek or provide any medical care. *Id*. ¶¶ 184-189.

The defendants argue, as above, that Bostic's allegations are not plausible because they are "inconsistent." ECF 40-1 at 19. Specifically, the defendants point out that in one instance, Bostic alleges that Samples was attacked on December 25-26 (ECF 34 ¶ 95), while in another, Bostic alleges that Samples was attacked on December 26-27 (*id.* ¶ 179). ECF 40-1 at 19. Once again, this argument misses the mark. Throughout the complaint, Bostic alleges that Samples suffered a cellmate attack "on or about December 25-26, 2022" (ECF 34 ¶ 95) or "on around December 26-27, 2022" (*id.* ¶ 179). Thus, Bostic pleads an estimated date of December 25 to 27, 2022 for the attack, which is specific enough to provide the defendants fair notice of what the claim is and the grounds upon which it rests. *See Bell Atl. Corp*, 550 U.S. at 555; *cf. Fleming v. Wayne Cnty. Jail,* 2023 U.S. Dist. LEXIS 136842, at *14, 2023 WL 5807052 (E.D. Mich. May 19, 2023). In sum, Bostic plausibly alleges that the on-duty defendants knew Samples was naked in his cell suffering from severe physical injuries and exposed to frigid cold temperatures and nonetheless failed to provide any aid.

Accordingly, Bostic has stated a claim for deliberate indifference to Samples' serious medical needs against the on-duty defendants.

## C. Qualified Immunity

Finally, the defendants who are going forward assert that they are entitled to qualified immunity because Bostic "did not sufficiently allege facts showing constitutional violations." ECF 40-1 at 20. For the reasons explained above, the Court

finds that Bostic sufficiently alleged constitutional violations against the on-duty defendants. And clearly established law provided these defendants notice that their alleged deliberate indifference based on Samples' severe and prolonged exposure to low temperatures and lack of clothing and bedding and deliberate indifference to serious medical needs violated Samples' Eighth Amendment rights. *See Farmer*, 511 U.S. at 847 ("Accordingly, we … hold that a prison official may be liable under the Eighth Amendment … if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."); *see also Patel v. Lanier Cnty Ga.,* 969 F.3d 1173, 1190 (11th Cir. 2020) ("[B]road [deliberate indifference] principle[s] ha[ve] put all law-enforcement officials on notice that if they actually know about a condition that poses a substantial risk of serious harm and yet do *nothing* to address it, they violate the Constitution.")

### IV. CONCLUSION

The defendants' motion to dismiss (ECF 40) is **GRANTED in part** and **DENIED in part**.[8] Bostic's conditions-of-confinement claim will proceed against on-duty defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury. Bostic's deliberate indifference to serious medical needs claim will proceed against on-duty defendants Ivey, Harrison, Floyd, Salad, Crayton, and Saulsbury. All other claims are **DISMISSED**

---

[8] The defendants assert in a footnote: "To the extent that Count III-Wrongful Death and Count IV-Estate Claims may be tort claims, they are due to be dismissed pursuant to the Georgia Tort Claims Act." ECF 40-1 at 9 n.4 (citing O.C.G.A. § 50-21-25(a)). In the Court's Order dismissing the first amended complaint, the Court ordered Bostic to show cause "why any claims brought pursuant to the Georgia State Tort Claims Act are not barred for lack of jurisdiction." ECF 29 at 2. Bostic agreed in his response to the show cause Order that the Court lacks jurisdiction over such claims (ECF 30 at 9), and thus, the Court construes the second amended complaint's "Wrongful Death" and "Estate Claim" Counts as allegations of damages rather than discrete claims. *See* ECF 34 ¶¶ 201-217.

**without prejudice,** and supervisory defendants Ward, Toole, and Toby are dismissed from this action.

**SO ORDERED**, this 4th day of December, 2025.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT